IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

BARRY L. MCMILLIAN                                                        PLAINTIFF

v.                                                                   CAUSE NO: 1:22-CV-117-SA-RP

ABERDEEN SCHOOL DISTRICT                                          DEFENDANT

### ORDER

On January 23, 2022, Barry McMillian proceeded to trial against his former employer, Aberdeen School District, alleging retaliation in violation of Title VII and Section 1981.[1] Following a two-day trial, the jury returned a verdict in favor of McMillian and awarded him $23,470.06 in damages. Now before the Court is McMillian's Motion for Reinstatement or, alternatively, Front Pay [87]. The Court is prepared to rule.

*Relevant Factual Background*

Barry McMillian was formerly employed at the Aberdeen School District as a general maintenance worker. He worked for the District as a maintenance employee for approximately twelve years.[2] McMillian was terminated from the District on August 16, 2021. The District alleged that McMillian's termination was a result of him leaving early and failing to return to work on August 6, 2021.

In March 2021, prior to his termination, McMillian filed an EEOC Charge against the District, alleging race discrimination. After his termination, McMillian filed a second EEOC

---

[1] Initially, McMillian asserted a state law whistleblower claim. Although the Court denied summary judgment and permitted McMillian to proceed to trial on that claim, McMillian withdrew the claim prior to trial.

[2] This was McMillian's second stint of employment with the District. He began working as a part-time maintenance worker in 2009. He transitioned to a full-time maintenance employee in 2014.

Charge alleging that his termination was in retaliation of him filing his first EEOC Charge in March 2021.

McMillian proceeded to trial on his retaliation claim. A jury returned a verdict in favor of McMillian and awarded him $3,470.06 in lost income and $20,000.00 in compensatory damages, totaling his award to $23,470.06.

Through the present Motion [87], McMillian seeks reinstatement of his maintenance position, or if reinstatement is infeasible, he requests front pay.

*Analysis and Discussion*

The District opposes McMillian being reinstated as well as being awarded front pay. The Court will address each issue in turn.

I.     *Reinstatement*

Reinstatement is the preferred equitable remedy under Title VII, as it is most consistent with Title VII's "make-whole" philosophy. *Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1469 (5th Cir. 1989). Before deviating from this preference, the Court must first "consider 'and adequately articulate' its reasons for finding reinstatement to be infeasible. . . ." *Palasota v. Haggar Clothing*, 499 F.3d 474, 489 (quoting *Julian v. City of Houston*, 314 F.3d 721, 729 (5th Cir. 2002)). Some Factors the Fifth Circuit has considered in determining the feasibility of reinstatement are "whether positions now exist comparable to the plaintiff's former position and whether reinstatement would require an employer to displace an existing employee," as well as "whether the plaintiff has changed careers and whether animosity exists between plaintiff and his former employer." *Id.* (citations omitted).

The District asserts that reinstatement is not feasible because McMillian's position no longer exists as it did during his employment with the District. Prior to McMillian's termination,

three maintenance positions existed: Director of Operations, Facilities Manager, and General Maintenance Worker. The District argues that since McMillian's termination, the maintenance department has been restructured. In its Response [91], the District contends that now only the Director of Operations, Assistant Operations Manager, and Facilities Manager positions exist.

Conversely, McMillian contends that even if a general maintenance position is no longer available, he performed several other jobs throughout the District. According to McMillian, aside from maintenance, he was responsible for painting and moving furniture and he also worked as both a janitor and cafeteria worker before being promoted to a maintenance worker. McMillian alleges that he also has a commercial driver's license and contends that the District likely has a need for bus drivers. Simply put, McMillian argues that with his experience and the shortage of workers in low-paying jobs, the District *should* have a position that he could fill even if there are no general maintenance positions available.

On June 25, 2024, the Court held an evidentiary hearing. During the hearing, Jason Roberson, the current Assistant Operations Manager, testified about the structure of the maintenance department. Although Roberson testified that he was not familiar with the Facilities Manager position, he provided testimony that there are currently two employees who perform all the maintenance duties in the District—himself and Daniel Ott, a general maintenance worker, who was hired in September 2023.[3] Roberson reports directly to Brandon. Ott also reports to Brandon, but Ott typically confers with Roberson about issues prior to going to Brandon.

---

[3] As noted above, in its Response [91], the District contends that there are no available general maintenance positions and that now only the Director of Operations, Assistant Operations Manager, and Facilities Manager positions exist. However, Roberson testified that he was not familiar with the Facilities Manager Position and that Ott is a general maintenance employee. The Court notes the inconsistencies regarding the titles for the positions, but it accepts Roberson's explanation on this point. Although Roberson's testimony was unclear about the official titles for the maintenance employees, his testimony was clear (and there is no dispute) that there are only three maintenance positions and three employees (Brandon, Roberson, and Ott) who fill the respective positions.

Andrea Pastchal-Smith, the current superintendent, also testified during the hearing. Pastchal-Smith testified that the District currently has no available maintenance, bus driver, or cafeteria positions. She additionally testified that there were only two available positions in the entire District, both of which were teaching positions. Furthermore, during her direct examination, Pastchal-Smith testified that the District's budget has decreased because of student enrollment and a decrease in funding from the state. Therefore, according to the District, the feasibility of McMillian returning to his position is low.

Next, the District contends that if McMillian is reinstated, the District would be forced to displace an innocent employee or create and fund an additional position.

The testimony from the hearing revealed that Daniel Ott is the only employee who performed general maintenance type duties. The District alleges that if McMillian were to be reinstated, the District would have to fire Ott to rehire McMillian. Notably, McMillian did not present any persuasive evidence to the contrary on this point. This factor weighs against reinstatement.

Finally, McMillian argues that he should be reinstated because there is no present animosity between him and Brandon.

Concerning whether animosity exists between the employer and supervisor, the Fifth Circuit has held that "the acrimony must rise to the level at which the parties' relationship is *irreparably damaged*." *Bogan,* 919 F.3d at 339 (emphasis added). Notably, there is some expectation of ill-feelings in discharge cases. However, those feelings alone are not enough to justify denying reinstatement. *Id.* (citing *Allen v. Autauga Cnty. Bd. of Educ.*, 685 F.2d 1302, 1306 (11th Cir. 1982)). The Fifth Circuit has further held that, "more than [a situation of inconvenience] is needed to find that the relationship between the parties is so broken that it has reached the point

4

of no return." *Id.* at 339. Importantly, the Fifth Circuit has also held that a court should point to *specific instances of discord* to justify denying reinstatement. *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 127 (5th Cir. 1992).

McMillian alleges that neither he nor Brandon presently have any hostility towards each other. McMillian further alleges that Brandon now has an Assistant Operations Manager (Roberson) that McMillian could report directly to instead of reporting directly to Brandon, which would limit their interactions with one another.

The District asserts that McMillian and Brandon's relationship is irreparably damaged. McMillian has a pending state court lawsuit against the City of Aberdeen, Aberdeen School District, and an Aberdeen police officer. On February 28, 2024 and March 22, 2024, McMillian's counsel in the state court proceeding (different than his counsel in this case) notified the District, via email, that he planned to add Brandon as a defendant to the lawsuit, alleging that he retaliated against McMillian. The District argues that because of McMillian's plan to sue Brandon, it would be disingenuous for McMillian to allege that he has no animosity towards Brandon. Additionally, the District contends that McMillian's assertion that he could report to the Assistant Operations Manager instead of reporting directly to Brandon is proof that there must be *some* hostility—at least on McMillian's end.

During the hearing, Roberson testified that the maintenance employees report directly to him and not to Brandon.[4] However, both Roberson and Pastchal-Smith testified that the maintenance employees interact with Brandon every day and there is no way to work in the department without interacting with Brandon. Notably, McMillian testified that he does not have any animosity toward Brandon and would be able to get along with him if he were to return as a

---

[4] The Court notes that Roberson also testified that he supervises the Bus Shop Foreman, Martinez Ward.

maintenance employee. McMillian further testified that Brandon has not been added a defendant to his state court lawsuit and he no longer planned to add Brandon as a defendant. Furthermore, McMillian testified that he would be willing to withdraw his lawsuit that involved the District if he were reinstated. Additionally, during trial, Brandon testified that he did not have a problem working with McMillian when he was employed at the District.

In a previous case, this Court denied reinstatement because it found that 1) the plaintiff's (Bogan) position no longer existed as it did during her employment; 2) Bogan intended to change careers to social work; 3) the defendant (MTD) would have terminated Bogan absent any purported discrimination; and 4) discord existed between the parties based on the Human Resource Manager's testimony. *Bogan v. MTD Consumer Grp., Inc.*, 2017 WL 4158623, at *4 (N.D. Miss. Sept. 18, 2017) ("*Bogan I*"). The Court also denied Bogan's request for front pay because the Court determined that Bogan failed to make a reasonable effort to obtain employment and mitigate future damages as required under the statute. *Id.* at 6.

Bogan appealed the Court's decision. *Bogan v. MTD Consumer Grp., Inc.*, 919 F.3d 332, 339 (5th Cir. 2019). There, the Fifth Circuit found no clear error with the Court's denial of front pay but remanded the reinstatement issue, concluding that the Court should not have considered two of the four factors it relied on in denying reinstatement. *Id.* First, the Fifth Circuit held that the Court should not have considered MTD's argument that, in the absence of any discrimination, Bogan would have been terminated because of her poor work performance and attitude. *Id.* at 337. Specifically, the Fifth Circuit held that because the jury found that MTD was liable for discrimination, "it would be improper for the court to override the jury's factfinding on this question when deciding equitable relief." *Id.* at 338. Next, the Fifth Circuit held that the Court's ruling that there was sufficient discord between the parties to justify denying reinstatement was

6

improper. *Id.* The Fifth Circuit noted that the Court "describe[d] MTD's hostility towards Bogan as 'palpable,'" but only cited the testimony of the HR manager "discuss[ing] the human resource issues he would face if the employee review process were to be negated by reinstating [Bogan]." *Id.* at 339. Accordingly, the Fifth Circuit held that the Court did not point to "specific instances of discord" demonstrating that the relationship between the parties was "irreparably damaged." *Id.* Ultimately, the Fifth Circuit held that the Court abused its discretion in not reinstating Bogan and remanded the issue for the Court's reconsideration. *Id.*

On remand ("*Bogan II*"*)*, this Court again denied both reinstatement and front pay. *Bogan v. MTD Consumer Grp., Inc.*, 2020 WL 957414, at *4 (N.D. Miss. Feb. 27, 2020). This time, in light of the Fifth's Circuit previous ruling, the Court did not "override the jury's factfinding" that MTD discriminated against Bogan in considering whether Bogan would have been terminated regardless of any purported discrimination. *Id.* at 2. The Court also found that there were no specific instances of discord between Bogan and MTD to justify denying reinstatement. *Id.* However, the Court still denied reinstatement because of other factors—such as no position being available—weighing heavily against reinstatement. *Id.* This ruling was affirmed on appeal. *See Bogan v. MTD Consumer Grp., Inc.*, 839 F. App'x 832 (5th Cir. 2020).

Here, similar to *Bogan*, the position that McMillian previously held is no longer available. The Court found Pastchal-Smith's testimony to be credible when she testified that there are no available maintenance jobs in the District or any other position that McMillian would be qualified for such as a cafeteria worker or a bus driver. The testimony from the hearing revealed that Daniel Ott is the only employee who performed general maintenance duties. If McMillian were to be reinstated, it would force the District to either fire Ott or create another maintenance position— one which Pastchal-Smith testified that the District lacks funding for. To be clear, as with her

testimony concerning the lack of available jobs, the Court found Pastchal-Smith to be credible on this issue, and McMillian did nothing to rebut it. Importantly, the Fifth Circuit has held that "[e]xcept under extraordinary circumstances…innocent incumbents may not be displaced." *Palasota*, 499 F.3d at 489. Thus, because the District would be forced to displace Ott to reinstate McMillian, reinstatement is infeasible under these circumstances.

As to any potential animosity, the Court notes that McMillian testified during the hearing that he could work with Brandon and also agreed to withdraw any claims against the District in exchange for reinstatement. The Court is cognizant of this testimony and is certainly not unaware of nor unsympathetic to McMillian's position; however, this testimony alone does not, in the Court's view, overcome the other factors weighing heavily against reinstatement.

Ultimately, the Court finds that reinstatement is infeasible. Although McMillian testified that he would be willing to work with Brandon (and Brandon testified that he did not have a problem with McMillian while he was employed at the District), all other considerations weigh against reinstatement. McMillian's request on this point is denied.

II. *Front Pay*

"If reinstatement is not feasible, front pay is the appropriate award." *Weaver v. Amoco Prod. Co.*, 66 F.3d 85, 88 (5th Cir. 1995). "[C]onsistent with the Act's 'make-whole' philosophy, front pay is available only in limited circumstances." *Hansard*, 865 F.2d at 1469. "The Courts have a decided preference for reinstatement instead of front pay." *Id.* It has been held that front pay cannot be recovered unless reinstatement is simply infeasible. *See id.*

Front pay has been defined as "an affirmative order designed to compensate the plaintiff for economic losses that have not occurred as of the date of the court decree, but that may occur as the plaintiff works toward his or her rightful place." *Sellers v. Delgado Cmty. Coll.*, 839 F.2d

1132, 1141 (5th Cir. 1988) ("*Sellers II*"). "Front pay can only be calculated through intelligent guesswork." *Sellers v. Delgado Coll.,* 781 F.2d 503, 505 (5th Cir. 1986) ("*Sellers I*"). Further, "the decision to award or deny front pay is a discretionary one, resting with the district court[.]" *Sellers II*, 839 F.2d at 1141.

In his Memorandum [88], McMillian contends that since he is unable to recover punitive damages because the District is a governmental entity, he should be awarded front pay. McMillian is seeking five years of front pay at a rate of $25,777.60 per year—totaling his award to $128,888.00. According to McMillian, the Court has the discretion to award him front pay for a five-year period. *See Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir. 1990) (holding that it was within the district court's discretion to award five years of front pay).

Conversely, the District contends that McMillian should not be awarded front pay for several reasons. First, the District contends that McMillian obtained employment with the City of Aberdeen approximately seven weeks after he was terminated from the District. Although McMillian is no longer employed with the City, the District alleges McMillian replaced his income and retained his retirement benefits during that employment.

Next, the District contends that front pay should not be awarded because McMillian seeks front pay to replace the punitive damages that he is unable to recover because the District is a governmental entity. According to the District, this runs counter to the Title VII's make-whole philosophy.

Finally, the District asserts that, in the event front pay is awarded, the amount should be nominal. The District argues that McMillian failed to offer any evidence to support a reasonable front pay award. The District further contends that McMillian has already received a sizable compensatory award ($23,470.06) and has been made whole under Title VII.

The Fifth Circuit has held that "a substantial liquidated damage award may indicate that an additional award of front pay is inappropriate or excessive." *Walther*, 952 F.2d at 127. This is because "a substantial liquidated damage award further strengthens the court's judgment that [the plaintiff] has already been made whole." *Palasota*, 499 F.3d at 491.

Here, as an initial matter, McMillian's contention that he is entitled to front pay because he is unable to recover punitive damages is unavailing. As the Fifth Circuit has held, Title VII remedies are supposed to be compensatory, not punitive. *See Sellers II*, 839 F.2d at 1141. Additionally, "the Fifth Circuit has warned that front pay 'awards must be carefully crafted to avoid a windfall to the plaintiff,'" as front pay is not intended to be punitive in nature. *Newcomb v. Corinth Sch. Dist.*, 2015 WL 1505839, at *17 (N.D. Miss. Mar. 31, 2015) (quoting *Palasota*, 499 F.3d at 490). To the extent that McMillian seeks front pay as way to punish the District, the request is squarely rejected.

Moreover, McMillian was awarded $23,470.06 in damages. In addition to being compensated $3,470.06 in lost wages, he was also awarded $20,000.00 in compensatory damages. Importantly, the Court notes that McMillian did obtain comparable employment seven weeks after his termination which, in some circumstances, weighs in favor of a front pay award. *See Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990) ("*Sellers V*") ("[t]he duty of a successful Title VII claimant to mitigate damages is not met by using reasonable diligence to obtain any employment. Rather the claimant must use reasonable diligence to obtain substantially equivalent employment") (quotations omitted); *see also Giles v. Gen. Elec. Co.*, 245 F.3d 474, 489 (5th Cir. 2001) (noting that "[b]ecause front pay is an equitable remedy employed to account for future lost earnings, the award should reflect earnings in mitigation of damages").[5] At trial, McMillian

---

[5] The Court is cognizant that, in light of McMillian's testimony during the hearing, he has used reasonable diligence to obtain new employment since being terminated from his job with the City. However, as noted

testified that both his pay and benefits during his subsequent employment were nearly identical to his pay and benefits at the District.

Through the jury verdict award, McMillian has already been compensated for his seven weeks of lost wages and awarded $20,000.00 in compensatory damages. What's more, McMillian's total award of $23,470.06 is almost equal to his yearly salary at the District. As noted above, a substantial liquidated damages award weighs against an additional award of front pay. *See Walther*, 952 F.2d at 127.

Thus, the Court finds that McMillian has received a substantial liquidated damage award and has already been made whole under Title VII. In the Court's view, taking into account the specific facts of this case, an additional front pay award would be inappropriate and excessive.

*Conclusion*

For the reasons set forth above, McMillian's Motion for Reinstatement or, alternatively, Front Pay [87] is DENIED. This CASE remains CLOSED.

SO ORDERED, this the 25th day of July, 2024.

/s/ Sharion Aycock  _____
UNITED STATES DISTRICT JUDGE

---

above, McMillian obtained employment with the City *afte*r his termination from the District. Therefore, in the Court's view, McMillian's efforts to find employment after being terminated from the City has little bearing on his request for front pay from the District.