IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

BARRY L. MCMILLIAN                                                                                          PLAINTIFF

v.                                                                                           CIVIL ACTION NO. 1:22-CV-117-SA

ABERDEEN SCHOOL DISTRICT                                                                          DEFENDANT

ORDER AND MEMORANDUM OPINION

On August 23, 2022, Barry McMillian filed his Complaint [1] against Aberdeen School District ("the District"), alleging unlawful retaliation under Title VII and Section 1981, discharge in violation of Mississippi's whistleblower statute, and discharge in violation of public policy under Mississippi law. McMillian voluntarily conceded the dismissal of his claim that he was discharged in violation of public policy. The Court denied summary judgment as to the remaining retaliation and whistleblower claims in its Order and Memorandum Opinion [59] issued January 5, 2024. *See* [59].

McMillian then voluntarily conceded his whistleblower claim and proceeded to a jury trial on his retaliation claim. On January 24, 2024, the jury returned a verdict in favor of McMillian, awarding him $3,470.06 in lost income and $20,000.00 in compensatory damages. *See* [83].

McMillian thereafter sought reinstatement or, alternatively, front pay. After holding an evidentiary hearing, the Court denied both requests. *See* [107].

Now before the Court is McMillian's Motion for Attorneys' Fees and Expenses [108]. The Motion [108] has been fully briefed and is ripe for review. The Court is prepared to rule.

*Analysis and Discussion*

Title VII allows the Court to award reasonable attorneys' fees and costs to the prevailing party. *See* 42 U.S.C. § 2000e-5(k)); *see Mota v. Univ. of Tex. Houston Health Science Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001). The parties do not dispute that McMillian is a prevailing party and

therefore entitled to an award of attorneys' fees and costs. They simply dispute the reasonableness of the attorneys' fees and costs requested.

"In this circuit, courts apply a two-step method for determining a reasonable attorney's fee award." *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 391-92 (5th Cir. 2016) (citing *Jimenez v. Wood Cty.*, 621 F.3d 372, 379 (5th Cir. 2010), *on reh'g en banc*, 660 F.3d 841 (5th Cir. 2011)). First, the court must calculate the lodestar, "which is equal to the numbers of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id.* at 392 (quoting *Jimenez*, 621 F.3d at 379). Second, "[t]hough the lodestar is presumed reasonable, the court may enhance or decrease it based on the twelve *Johnson* factors." *Id.* (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 553-54, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010); *Jimenez*, 621 F.3d at 380). "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Monroe v. Houston Ind. Sch. Dist.*, 2023 WL 1424280, at *4 (quoting *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V.*, 23 F.4th 408, 415 (5th Cir. 2022)).

Here, Plaintiff's counsel requests $101,046.00 in attorneys' fees and $3,362.03 in costs. The Itemization of Fees and Costs indicates that Attorney Jim Waide billed 142.1 hours at an hourly rate of $450.00, Attorney Rachel Pierce Waide billed 57.6 hours at an hourly rate of $350.00, Attorney Ron Woodruff billed 43.8 hours at an hourly rate of $350.00, and Paralegals billed 17.9 hours at an hourly rate of $90.00. *See* [108], Ex. 1 at p. 9.

The Court begins with the calculation of the lodestar.

I.   *Number of Hours*

"[T]he first step in determining reasonable attorneys' fees is an evaluation of the number of hours reasonably expended." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.

1995) (citation omitted). In doing so, "[t]he court should exclude all time that is excessive, duplicative, or inadequately documented." *Combs*, 829 F.3d at 392 (quoting *Jimenez*, 621 F.3d at 379-80). Parties submitting fee requests are required to exercise billing judgment, "which refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours." *Walker v. U.S. Dept. of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996).

Here, Plaintiff's counsel has submitted an Itemization of Fees and Costs reflecting the tasks performed, by whom they were performed, the date they were performed, the time expended on each task, and the applicable hourly rates charged. *See* [108], Ex. 1. The District takes issue with several of the entries. The Court sees no need to address each disputed entry line by line. The Court will address the entries it finds problematic.

First, the District contends that the following entries are duplicative, as both attorneys billed for discussing an entirely separate lawsuit with McMillian:

| Date | Attorney | Task | Time Billed | Total Cost |
|---|---|---|---|---|
| 09/29/2022 | JDW | Correspondence to Mr. McMillian re separate Lawsuit in Monroe County | .20 | 90.00 |
| 10/07/2022 | RPW | Review circuit court file in McMillian v. Brandon and conference with Mr. McMillian re filings and impact upon case | 2.00 | 700.00 |

Plaintiff's counsel responds that the District based its arguments against reinstatement on the separate lawsuit, and their conversations with McMillian were therefore necessary. The Court agrees that the conversations with McMillian regarding the impact of the separate lawsuit were likely necessary. However, the Court further agrees that the entries are duplicative, and, as discussed below, McMillian did not succeed on his request for reinstatement. The Court will

3

therefore reduce the total time billed by 50 percent to .10 hours at J. Waide's rate and 1 hour at R. Waide's rate.

Next, the District contends that the following entries are excessive:

| Date | Attorney | Task | Time Billed | Total Cost |
|---|---|---|---|---|
| 01/16/2024 | RPW | Receive and review Order on Motions in Limine | 1.0 | 350.00 |
| 01/16/2024 | JDW | Receive and review Order on Motions in Limine | 1.0 | 450.00 |

The District argues that the Court's Order [65] denying the Motions *in Limine* was a three-and-one-quarter page order with simple conclusions. The Order [65] did not preclude McMillian from introducing evidence in support of his claims. As such, the District argues that proper review of the Order [65] did not require two attorneys to each bill one hour of time for a total of $800. The Court agrees, particularly when compared to the entries counsel billed to review documents related to the fact-intensive Motion for Summary Judgment [36]. *See, e.g.*, [108], Ex. 1 at p. 5-6 (J. Waide billed 1.3 hours to review the District's Motion [36], memorandum, and exhibits; 1 hour to review the District's Reply [43]; and 1.5 hours to review the Court's Order and Memorandum Opinion [59]). The Court therefore reduces the total time billed by 50 percent to .50 hours for J. Waide and .50 hours for R. Waide.

The District additionally argues that Plaintiff's counsel should not be awarded fees for work on unsuccessful claims. "It is axiomatic that 'work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved". . . and therefore no fee may be awarded for services on [an unsuccessful claim].'" *Fessler*, 23 F.4th at 416 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). If unrelated to the successful claims, the unsuccessful claims must be excluded from the fee award. *Id.* (citing

4

*Hensley*, 461 U.S. at 435-36, 103 S. Ct. 1933). "But when claims. . . share a 'common core of facts' or 'related legal theories,' a fee applicant may claim all hours reasonably necessary to litigate those issues." *Id.* (quoting *La. Power*, 50 F.3d at 327). "When a plaintiff's claims cannot be disentangled, the district court's focus should shift to the results obtained and adjust the lodestar accordingly." *Id.* (quoting *La. Power*, 50 F.3d at 327 n. 13).

Here, McMillian brought three claims: unlawful retaliation, discharge in violation of public policy, and discharge in violation of Mississippi's whistleblower statute. The Itemization of Fees and Costs makes no distinction between the hours worked on each claim. The claims are based on somewhat related legal theories in that they would all require McMillian to prove that he was terminated for a reason other than the one articulated by the District. As such, the claims shared some common questions of fact. Most significantly, all claims involved a question of whether the District maintained a particular unwritten overtime policy. Because the claims cannot be disentangled, the Court cannot exclude particular hours from the fee award on the basis that they were expended on unsuccessful claims. Instead, the Court will account for McMillian's degree of success when considering whether to adjust the lodestar based on the *Johnson* factors.

On the other hand, McMillian's lack of success on the Motion for Reinstatement [87] can be easily disentangled from the remainder of the relief he sought.[1] Plaintiff's counsel asserts that hours worked on unsuccessful motions should not be excluded because "a litigant who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage." [118] at p. 10 (quoting *Air Transp. Ass'n of Canada v. FAA*, 156 F.3d 1329, 1335 (D.C. Cir. 1998) (citing *Cabrales v. Cty. of Los Angeles*, 935

---

[1] The Court acknowledges that an appeal of the Court's Order [107] denying reinstatement is currently pending. Should McMillian succeed on appeal, he will be permitted to bring the issue of fees before the Court for reconsideration.

5

F.2d 1050, 1053 (9th Cir. 1991)) (internal quotation marks and alterations omitted). Plaintiff's counsel further points out that the Fifth Circuit has held that "a party may recover for time spent on unsuccessful motions so long as it succeeds in the overall claim." *Id.* (quoting *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 434 (5th Cir. 2003)). The hours spent on the Motion for Reinstatement [87] were not necessary for success on McMillian's claim that he previously won at trial, and the hours are easily identifiable on the Itemization of Fees and Costs. The Court will therefore exclude those hours from the lodestar calculation—27.9 hours billed by J. Waide, 4.2 hours billed by R. Waide, and 1.6 hours billed by the firm's paralegals. *See, e.g., Sade v. Southern Uni. Sys.*, 2005 WL 8155807, at *8 (M.D. La. Sept. 28, 2005) (finding plaintiff's counsel should not be awarded attorney's fees for work performed in unsuccessfully defending a post-trial motion as it was not "expended in pursuit of the ultimate result achieved") (quoting *Hensley*, 461 U.S. at 435-36, 103 S. Ct. 1933).

Taking into account the reductions noted above, for purposes of the lodestar calculation, J. Waide worked 113.6 hours, Woodruff worked 43.8 hours, R. Waide worked 51.9 hours, and the firm's paralegals worked 16.3 hours.

II. *Hourly Rates*

The second step of the lodestar analysis is to determine a reasonable hourly rate for each attorney. "Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rate that lions at the bar may command." *Richard v. St. Tammany Parish Sheriff's Dept.*, 2022 WL 45334728, at *10 (E.D. La. Sept. 28, 2022) (quoting *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000)). "It is the plaintiff's burden to 'produce satisfactory evidence. . . that the requested rates are in line with those prevailing in the relevant community for similar services by lawyers of reasonable comparable skill, experience and reputation.'" *Id.* (quoting

6

*Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cty., Tex.*, 752 F.2d 1063, 1073 (5th Cir. 1985)).

Here, the Itemization of Fees and Costs reflects hourly billing rates of $450 for J. Waide, $350 for Woodruff, $350 for R. Waide, and $90 for paralegal work.[2] Each of McMillan's attorneys has submitted the affidavits of three Mississippi attorneys attesting to the reasonableness of the hourly rates requested. *See* [108], Ex. 2-4, 8-10, 12-14. Plaintiff's counsel has additionally provided an affidavit detailing their experience and reputation. *See* [108], Ex. 17. J. Waide has been practicing law for approximately 50 years and has extensive experience trying civil rights cases. Woodruff practiced law for approximately 22 years before his death in May 2023. R. Waide has been practicing law for approximately 24 years and has extensive experience trying cases.

A. *Jim Waide*

Plaintiff's counsel relies on several cases to support J. Waide's proposed hourly rate. First, in *Schaeffer v. Warrant Cty., Miss.*, 2017 WL 5709640, at *10 (S.D. Miss. Nov. 27, 2017), the United States District Court for the Southern District of Mississippi approved an hourly rate of $325 for Louis Watson, a labor lawyer with over 25 years of experience, and $275 for Nick Norris, a labor lawyer with 12 years of experience who "handled the bulk of [the] litigation." Watson received $375 per hour in *Perez v. Bruister*, 2015 WL 5712883, at *6 (S.D. Miss. Sept. 29, 2015), which was a complex ERISA case. J. Waide points out that he is more experienced than Watson and that Watson's hourly rate would be higher today. Moreover, in *Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, 2011 WL 6699447, at *7 (S.D. Miss. Dec. 21, 2011), the Southern District approved a $375 per hour rate for Don Barrett, an insurance defense attorney

---

[2] The District does not dispute that $90 per hour is a reasonable rate for paralegals. The Court therefore approves the proffered $90 hourly rate.

with 41 years of experience. J. Waide again notes that he is more experienced Barrett and that Barrett's rate would be much higher today.

The Court does not place a substantial amount of weight on the hourly rates approved in *Schaeffer*, *Perez*, or *Penthouse Owners Ass'n*. As an initial matter, those rates were approved in the Southern District of Mississippi. Generally speaking, the "relevant legal market" is "the community in which the district court sits." *Alvarez v. McCarthy*, 2022 WL 822178, at *3 (5th Cir. Mar. 18, 2022) (quoting *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2022)); *see Cooper v. Majestic Miss., LLC*, 2022 WL 22822795, at *4 (May 25, 2022) (approving lower hourly rate where fee applicants relied heavily on Southern District of Mississippi cases to support their requested rates).[3] Moreover, *Perez* and *Penthouse Owners Ass'n* were ERISA and insurance cases, respectively, with more complexities than the case *sub judice*.

Plaintiff's counsel also relies on *United States ex rel. Jehl v. GGNSC Southaven LLC*, 2024 WL 1145962, at *3 (N.D. Miss. Mar. 14, 2024), where an attorney in the Northern District of Mississippi *was* approved for $450 per hour. But like *Perez* and *Penthouse Owners Ass'n*, *Jehl* was a complex, "high-stake[s]" False Claims Act case. *Id.* In approving the $450 hourly rate, the Court considered the hourly rates of lawyers in the Southern District of Mississippi because there was "sufficient unrebutted evidence [of] the need to turn to out-of-district counsel due to the lack of experienced FCA counsel in the Northern District of Mississippi." *Id.* As such, *Jehl* does not reflect prevailing hourly rates for labor lawyers in the Northern District of Mississippi.

Plaintiff's counsel additionally emphasizes that this Court has twice approved J. Waide's requested hourly rate of $400. *See Bogan v. MTD Consumer Grp., Inc.*, 2018 WL 279985, *3

---

[3] The Court notes that Plaintiff's counsel additionally attached the "Laffey Matrix" to its Motion for Attorneys' Fees and Costs [108], purportedly showing appropriate hourly rates based on years of experience. The matrix appears to represent rates based on the national market, which is not the relevant legal market. See *Tollett*, 285 F.3d at 368.

8

(N.D. Miss. Jan. 3, 2018); *Griggs v. Chickasaw Cty., Miss.*, 2020 WL 853532, at *2 (N.D. Miss. Feb. 20, 2020). Plaintiff's counsel argues that several years have passed since *Bogan* and *Griggs*, and the hourly rate should therefore be increased due to inflation and J. Waide's additional years of experience. Plaintiff's counsel asserts that in 2024, he tried three cases prior to August.

The Court acknowledges J. Waide's depth of experience as a trial lawyer in this practice area. However, the Court finds that the previously approved $400 per hour rate sufficiently reflects J. Waide's extensive experience given that it is higher than customary rates in the Northern District of Mississippi. *See Cooper*, 2022 WL 22822795, at *4 ("[A]n hourly rate of $250-300 is customary for attorneys practicing law in federal courts for the Northern District of Mississippi.") (citing *Auto Parts Mf'g Miss. Inc. v. King Constr. Of Hous., LLC*, 258 F. Supp. 3d 740, 756 (N.D. Miss. 2017)). This case also presented no novel or difficult questions. Plaintiff's counsel does not assert that this case required a greater amount of skill, time, or labor than that required to perform legal services in other cases. The Court sees no need to depart from the previously approved $400 hourly rate.

### B. Ron Woodruff

In support of Woodruff's proposed rate of $350 per hour, Plaintiff's counsel again points to *Bogan* and *Griggs* where this Court approved an hourly rate of $250 for Woodruff. *See Bogan*, 2018 WL 279985, *3; *Griggs*, 2020 WL 853532, at *2. Plaintiff's counsel argues that Woodruff developed more skills after those cases were decided.

Plaintiff's counsel also relies on *Berkley v. Lafayette Cty., Miss.*, 2022 WL 533051, at *5 (N.D. Miss. Feb. 22, 2022), where the Court approved a $325 hourly rate for Gregory T. Butler, who allegedly had nine less years' experience than Woodruff at the time.

The Court agrees that Woodruff's fee should be higher than that which was approved in *Bogan* and *Griggs*. However, as noted, this case was not a complex or time-consuming case.

9

Moreover, Plaintiff's counsel does not allege that Woodruff gained additional trial experience after *Bogan* and *Griggs*, which is a central part of their argument in favor of increased hourly rates for J. Waide and R. Waide. The Court finds that $300 is an appropriate hourly rate for Woodruff.

    *C. Rachel Pierce Waide*

In support of R. Waide's proposed rate of $350 per hour, Plaintiff's counsel again points to *Bogan* and *Griggs* where this Court approved an hourly rate of $250 for R. Waide. *See Bogan*, 2018 WL 279985, *3; *Griggs*, 2020 WL 853532, at *2. Like above, Plaintff's counsel asserts that R. Waide's rate should be increased pursuant to inflation and R. Waide's increase in experience. The Court agrees and approves the proffered $350 per hour rate.

    *D. Travel Rates*

Lastly, the District contends that "[t]ime spent traveling should not be billed at an attorney's regular hourly rate." [115] at p. 8. "[T]ravel time is often reduced by 50% of the attorney's rate absent evidence that any legal work was accomplished during travel time." *Richard*, 2022 WL 4534728, at *8 (citing *In re Babcock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2088)); *see Winborne v. Sunshine Health Care, Inc.*, 2009 WL 2900011, at *4 (N.D. Miss. Sept. 3, 2009) (reducing hourly rate by 50 percent for travel time); *Pickett v. Miss. Bd. of Animal Health*, 2021 WL 4979009, at *1 (S.D. Miss. Oct. 26 2021) (same). The Court will accordingly reduce Plaintiff's attorneys' hourly rates by 50 percent for travel time. Of the hours remaining after excluding the hours billed for the Motion for Reinstatement [87], J. Waide billed four hours of travel time, Woodruff billed 1.5 hours of travel time, and R. Waide billed four hours of travel time.

III.     *Lodestar Calculation*

Taking into account the modifications set forth above, the Court calculates the lodestar as follows:

|                | **Hours** | **Rate**  | **Fees**    |
|----------------|-----------|-----------|-------------|
| Jim Waide      | 109.6     | $400.00   | $43,840.00  |
| Ron Woodruff   | 42.3      | $300.00   | $12,690.00  |
| Rachel Waide   | 47.9      | $350.00   | $16,765.00  |
| Paralegal      | 16.3      | $90.00    | $1,467.00   |
| J. Waide Travel| 4         | $200.00   | $800.00     |
| Woodruff Travel| 1.5       | $150.00   | $225.00     |
| R. Waide Travel| 4         | $175.00   | $700.00     |
|                |           | **Total Fees:** | $76,487.00 |

IV.     *Adjustment to the Lodestar Calculation*

"There is a strong presumption that the lodestar award established by the district court is the reasonable fee." *Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 F. App'x 341, 341 (5th Cir. 2007) (per curiam) (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1044 (5th Cir. 1999)). However, the Court may increase or decrease the lodestar based on the factors outlined in *Johnson*:

> (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the

11

    professional relationship with the client; and (12) awards in similar cases.

*Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 n.18 (5th Cir. 2006) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

  The Court may not adjust the lodestar due to a *Johnson* factor already considered in the lodestar calculation; "to do so would be impermissible double counting." *Id.* at 800 (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)).

  Here, the Court considered the first, second, third, fifth, ninth, and twelfth factors in the lodestar calculation.[4] The Supreme Court has held that factor six should not be considered. *See City of Burlington v. Dague*, 505 U.S. 557, 567, 112 S. Ct. 638, 120 L. Ed. 2d 449 (1992)). Factors four, seven, ten, and eleven are neutral. This leaves the Court to consider factor eight—the amount involved and the results obtained.

  "'[T]he most critical factor' in determining a reasonable fee 'is the degree of success obtained.'" *Combs*, 829 F.3d at 394 (quoting *Hensley*, 461 U.S. at 436, 103 S. Ct. 1933). "And when the suit is for damages, 'a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.'" *Fessler*, 23 F.4th at 418 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992)).

  Here, as noted, the Complaint [1] brought three claims and sought actual damages and reinstatement. McMillian conceded one claim and he prevailed at summary judgment as to two of his claims. He then conceded his whistleblower claim and proceeded to trial on his retaliation

---

[4] With respect to the twelfth *Johnson* factor—awards in other cases—Plaintiff's counsel points to caselaw in support of their proposed hourly rates. Those cases were considered in the lodestar calculation. The parties otherwise point to no caselaw suggesting that the proposed attorneys' fees are inconsistent with awards is other cases.

claim. At trial, McMillian requested that the jury award him $3,470.06 in lost income but he did not propose a particular amount of compensatory damages. The jury returned a verdict in his favor and awarded him $3,470.06 in lost income and $20,000.00 in compensatory damages. As noted above, the Court then denied McMillian's request for reinstatement, but the Court accounted for his lack of success as to that relief in its lodestar calculation.

Asserting that the lodestar should not be reduced, McMillian argues that he was "*entirely successful*" because the jury awarded him compensatory damages and the exact amount of lost income he sought. [118] at p. 10 (emphasis in original). Arguing that McMillian achieved limited success, the District asserts that the lodestar should be reduced due to McMillian's two unsuccessful claims and because the jury awarded him "*only* $23,470.06[.]" [115] at p. 12 (emphasis added).

On one hand, the Court finds it significant that McMillian was awarded two types of damages sought in his Complaint [1], including the exact amount of back pay sought and compensatory damages equal to almost six times that back pay. Again, "a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Fessler*, 23 F.4th at 418. And though the District argues that McMillian's damages were not particularly significant, in its Order and Memorandum Opinion [107] denying McMillian's Motion for Reinstatement or Front Pay [87], the Court found that the $23,470.06 award was "substantial" as it was "almost equal to his yearly salary at the District." [107] at p. 11. The Court also gives weight to the fact that McMillian overcame summary judgment on two of his three claims. On the other hand, the bottom line is that McMillian brought three claims and only succeeded on one.

Given that McMillian's suit was relatively successful overall, the Court will reduce the lodestar by only 10 percent to account for McMillian's two unsuccessful claims. The Court accordingly awards McMillian $68,838.30 in attorneys' fees.

V.      *Expenses*

Lastly, McMillian requests for $3,362.03 in expenses. Title VII permits the prevailing to party to collect "'reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services,' such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs." *Mota*, 261 F.3d at 529 (citations omitted). "Furthermore, under 28 U.S.C. § 1920, a court may tax the following costs: fees of the clerk and marshal; fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; fees and disbursements for printing and witnesses; fees for exemplification and copies of papers necessarily obtained for use in the case; docket fees; compensation of court-appointed experts, interpreters, and special interpretation services." *Bogan*, 2018 WL 279985, at *4.

Here, the District contests the $45.00 expense for service of a subpoena on the State Auditor's office. The District contends that this expense was related to McMillian's unsuccessful whistleblower claim. The Court agrees and will deduct that expense.

Though not contested by the District, for the sake of consistency, the Court will additionally deduct the expenses associated with the Motion for Reinstatement [87]. Those expenses totaled $293.58.

In sum, the Court deducts $338.58 from the requested expenses. McMillian may recover $3,023.45 in expenses.

14

*Conclusion*

For the reasons set forth above, McMillian's Motion for Attorneys' Fees, Costs and Expenses is GRANTED but not to the extent requested. McMillian is awarded $68,838.30 in attorneys' fees and $3,023.45 in expenses.

SO ORDERED, this the 25th day of February, 2025.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE